UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PEGGY DUNCAN MATHES,<br>Administrator of the Estate of<br>ROY GLENN HALL, JR.<br><br>    Plaintiff,<br><br>vs.<br><br>METROPOLITAN GOVERNMENT OF<br>NASHVILLE AND DAVIDSON COUNTY,<br>TENNESSEE; DAVIDSON COUNTY<br>SHERIFF'S OFFICE; CORRECT CARE<br>SOLUTIONS, LLC; DAVIDSON COUNTY<br>SHERIFF OFFICERS SCOTT ARNOLD,<br>LAMONDO BROWN, ELSIE NOEL, and<br>MICAH NOWACK , in their individual and<br>official capacities; RAPHAEL CRAWFORD,<br>L.P.N.; TONJA CALDWELL, L.P.N.;<br>AMANDA MONROE, L.P.N. ; CINDY<br>ENSLEY, L.P.N.; and JEAN GRAVES,<br>L.P.N. in their individual and official capacities,<br><br>    Defendants. | No._____<br><br>JURY DEMAND |

## COMPLAINT

Plaintiff, by and through the undersigned counsel, respectfully files this Complaint.

### I. Jurisdiction

1. Federal jurisdiction is predicated on Title 28 U.S.C. §§ 1331, 1343, 1385 and 1367. Plaintiff sues under the Civil Rights Act of 1871, Title 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

2. The matter in controversy exceeds, exclusive of interest and costs, the sum

specified by Title 28 U.S.C. § 1332.

## II. Venue

3. Venue in this Court is proper under 28 U.S.C. § 1391, and this Court has personal jurisdiction over the defendants in this matter because the events giving rise to this claim occurred in this district and one or more defendants reside here.

## III. Parties

4. Peggy Duncan Mathes, at all times relevant to this litigation, was a citizen of Davidson County, Tennessee. She is the duly appointed administrator of the Estate of Roy Glenn Hall, Jr., who died on May 24, 2009 in the Davidson County Jail (Criminal Justice Center) at 448 2nd Avenue North, Nashville, Tennessee, 37201.

5. The Defendant, Metropolitan Government of Nashville and Davidson County Tennessee ("Metro"), is a political subdivision established under the laws of the State of Tennessee. The Davidson County Sheriff's Office is a department of the Metropolitan Government of Nashville and Davidson County, which entities are collectively referred to herein as the "DCSO." Pursuant to the Charter of the Metropolitan Government of Nashville and Davidson County, the DCSO's primary duties are to house inmates and serve civil warrants. Defendant DCSO can be served through the Metropolitan Department of Law at 108 Metropolitan Courthouse, Nashville, Tennessee, 37201.

6. Upon information and belief, the Defendant, Correct Care Solutions, LLC ("CCS") is a foreign limited liability company (incorporated in Kansas), which manages and operates the health care services at the jails operated by DCSO. Specifically, CCS manages and operates the health care services at the Criminal Justice Center ("CJC"). CCS can be served through its registered agent, Patrick Cummiskey, 3343 Perimeter Hill Drive, Suite 300,

Nashville, Tennessee, 37211.

7. Defendants Arnold, Brown, Nowack and Noel were employees of the Davidson County Sheriff's Office who were acting in the course and scope of their employment under color of state law at the times material in this case. They may be served with process herein at 448 2nd Avenue North, Nashville, Tennessee, 37201.

8. Defendants Crawford, Caldwell, Monroe, Endsley and Graves were nurses (L.P.N.s) who were acting in the course and scope of their employment with CCS at the times material in this case, under color of state law.[1] They may be served with process as follows: Raphael Crawford, 110 Bartlett Lane, Hendersonville, Tennessee 37075; Cindy Endlsey, 423 Tanglewood Court, Nashville, Tennessee 37211; Amanda M. Monroe, Nashville, Tennessee 37214; Tonja J. Caldwell, Goodlettsville, Tennessee; Jean Graves, Bethpage, Tennessee.

### IV. Nature of the Case

9. Plaintiff brings this case against DSCO, CCS and the other Defendants for the death of Roy Glenn Hall, Jr., an inmate at the CJC. Plaintiff asserts § 1983 claims for deliberate indifference to serious medical needs and inadequate medical care in violation of the Eighth and Fourteenth Amendments.

10. The Eighth Amendment's prohibition against cruel and unusual punishment, applicable to the states through the Fourteenth Amendment, requires that prisoners be provided with adequate medical care.

11. Plaintiff avers that Roy Hall was deprived of rights secured by the Constitution or laws of the United States and that his death was caused by persons acting under the color of state law: the DCSO employees and officers at the CJC and the employees of CCS. Defendants (and

---

[1] Plaintiff would note that the Tennessee Department of Health website has no listing or information for any medical licensing for Raphael Crawford. *See:* http://health.state.tn.us/licensure/default.aspx

their employees/agents) were state actors who were responsible for providing medical care to inmates and ensuring their safety and wellbeing.

12. Plaintiff understands that Defendants' actions may constitute violations of the Tennessee Medical Malpractice Act (the "Act"). Plaintiff is providing timely notice to the Defendants of her potential medical malpractice claims on behalf of the estate of Roy Glenn Hall, Jr. Pursuant to the Act, Plaintiff must wait 60 days from the date of providing notice to Defendants of any potential medical malpractice claims before she can file suit under the Act. When this 60-day waiting period expires, Plaintiff intends to either seek leave to amend this complaint to assert pendant state claims under the Tennessee Medical Malpractice Act against the Defendants or will file a separate state court action. However, because this action is for federal civil rights claims and because this Court may not interpret all of the claims asserted in this Complaint as claims being brought under the Tennessee Medical Malpractice Act, and because Plaintiff recognizes that any claim not arising under the Tennessee Medical Malpractice Act would be time-barred if it is not filed on or before May 24, 2010, Plaintiff is filing this Complaint to assert any and all claims arising out of Roy Hall's death that do not arise under the Act.

### V. Factual Allegations

13. Roy Glenn Hall, Jr. was a 52-year-old inmate housed at the Criminal Justice Center located at 448 2nd Avenue North, Nashville, Tennessee. Mr. Hall died of a perforated duodenal ulcer with acute peritonitis, a treatable medical condition; he was found unresponsive on the floor of his cell on May 24, 2009.

14. Roy Hall was arrested on May 19, 2009 and booked into the CJC for two capias misdemeanors. He was incarcerated until the time of his death on May 24, 2009.

15. Mr. Hall was screened by medical staff employed by CCS on May 20, 2009, during which CCS medical staff determined that Mr. Hall, a diabetic, was to be periodically checked regarding his blood sugar levels.

16. Despite CCS's awareness that Mr. Hall needed to be monitored and closely evaluated regarding his diabetes (as well as previous diagnoses of Hepatitis A, B, and C and liver disease of which CCS was aware, as such conditions were noted in Mr. Hall's medical file from previous stays at the jail), Mr. Hall was not seen by a physician at any point between May 19, 2009 and the day of his death on May 24, 2009.

17. On May 24, 2009, at approximately 3:30 p.m. and 7:00 p.m., DCSO officer Scott Arnold observed Mr. Hall "to be shaking and breathing oddly." A "Contact Log Report" written by Officer Arnold indicates that he was concerned about Mr. Hall's health and notified CCS medical personnel.

18. Mr. Hall told both Officers Brown and Arnold that "he was going to die" and Hall kept telling Officer Brown in the 24 hours prior to his death that "he was going to pass away." Hall also could not eat. Defendant Noel was personally aware of Hall's serious medical needs and in a position to ensure he received adequate medical care, and refused to do so. Defendant Nowack responded when Hall was found unresponsive in his cell, but did not provide medical assistance. The DCSO defendants Arnold, Brown, Noel and Nowack failed to take action to ensure that Mr. Hall received medical treatment for his obvious, serious medical needs.

19. More specifically, after the shift change on May 24 at approximately 3:30 p.m., Officer Arnold was approached by Mr. Hall who was "shaking" with "odd breathing." Arnold asked if Hall was "OK?" and Hall said "No."

5

20. A DSCO "Supplemental Report" noted that DCSO officer Arnold used a wheelchair to take Mr. Hall to the medical unit. Officer Arnold is quoted in reports as stating that Mr. Hall was "gasping" and "shaking." These signs and symptoms are obvious serious medical needs. However, *no* medical treatment or referral to a physician was provided by DCSO, CCS or the other Defendants.

21. Arnold noted that he "called the clinic to inquire about inmate's health and the nurses informed me that [Mr. Hall] was not terminally ill and he was good to be in a [general population] cell." CCS Nurse Graves said Hall could be put in general population despite his serious and untreated medical condition.

22. A "Jail Incident Report" also written by Officer Arnold mentions that Mr. Hall was too weak to walk to "Accucheck" and had to be wheeled in a borrowed wheelchair. Later in the evening on May 24, at approximately 7:00 p.m., Officer Arnold again called medical staff, specifically CCS Nurse Raphael Crawford, because Mr. Hall had "stated he was having trouble breathing." Officer Arnold said Hall "looked shaky." The entire episode was also recorded in the "Jail Incident Report" mentioned above:

> "I once again called medical and spoke with Nurse Raphael Crawford . . . A few minutes later Nurse Crawford came to the floor and took what appeared to be inmate Hall's vital signs . . . Approximately 30 minutes later inmate Hall returned to the floor cleared by medical."

23. CCS Nurse Crawford examined Mr. Hall on May 24 at approximately 7:05 p.m. because he was "SOB" (short of breath). Nurse Crawford noted that Mr. Hall's stomach was "distended" and he was "jaundiced." In fact, according to video of Mr. Hall after he was found unresponsive in his cell, his stomach was grossly distended which indicated an obvious medical problem. A subsequent autopsy report noted that more than <u>3 liters</u> of fluid were drained from Mr. Hall's abdomen. Mr. Hall's condition was so obvious to laypersons that other inmates in his

housing unit informed DCSO employees that Hall needed medical attention. CCS medical records state that Nurse Crawford saw Mr. Hall in his cell and recorded that he "speaks with difficulty", "told officers he could not breathe", and "states he has had abdominal pain X 3 days." His abdomen was "firm" and "warm to the touch." Hall was transported to the clinic by wheelchair. Again, *no* medical treatment or referral to a physician was provided by DCSO, CCS or the other Defendants.

24. The DSCO "Movement History" records confirm that Mr. Hall was taken to the medical unit on May 24th. A DCSO "jail incident report" notes that Mr. Hall was "seen by medical three times" and had "needed a wheelchair and assistance each time." The inability to walk for a person who is "gasping and shaking" is an obvious serious medical condition, yet *no* medical treatment or referral to a physician was provided by DCSO, CCS or the other Defendants.

25. CCS Nurse Crawford and Nurses Endsley, Caldwell, Monroe and Graves were aware of risks associated with Hall's inability to eat, gasping for breath, shaking, inability to walk, a grossly distended abdomen, jaundice, a stomach "warm to the touch" and/or abdominal pain of 3 days duration. The failure of these Defendants to provide adequate medical care to Mr. Hall despite these obvious symptoms and his repeated medical complaints constituted deliberate indifference to Mr. Hall's serious medical needs. It was not necessary that the CCS nursing staff or DSCO employees were specifically aware that Hall could die as a result of his condition, but rather that the DSCO Defendants, CCS, Nurse Crawford and the other Defendant nurses knew that serious risks accompanied the signs and symptoms that were observed and documented. As trained medical professionals, the Defendant CCS nurses were especially aware or should have been aware of such dangers and of the need to provide adequate medical treatment to Mr. Hall.

7

Case 3:10-cv-00496   Document 1   Filed 05/21/10   Page 7 of 13 PageID #: 7

26. In contravention of established polices, procedures and standards, DCSO staff at the CJC, specifically Defendant Arnold, failed to make timely rounds as required – with the result that Mr. Hall's dire medical condition was not timely discovered when he was dying.

27. Mr. Hall was found unresponsive on the floor of his cell at about 11:15 p.m. on May 24, 2009. He was pronounced dead shortly thereafter.

28. An autopsy determined that Mr. Hall died from "acute peritonitis secondary to perforated duodenal ulcer," a treatable medical condition.

29. Mr. Hall was never seen by a physician and received no medical *treatment* by the CCS or DCSO Defendants prior to his death. In fact, some DCSO employees reportedly made disparaging comments about Mr. Hall's condition before he died, including comments that they "didn't care if he died" so long as it wasn't on their shift, and that he was faking his condition.

## VI. Federal Law Claims: Civil Rights Violation (42 U.S.C. § 1983)

30. The allegations set forth in the previous paragraphs to this Complaint are incorporated herein by reference.

31. Under the Fourteenth Amendment, pretrial detainees have a right to adequate medical treatment and care that is analogous to a prisoner's Eighth Amendment right. Here, the circumstances were clearly sufficient to indicate the need for medical attention for injury or illness such that the denial of such aid constitutes the deprivation of constitutional due process. As applied to this case, Hall's right to adequate medical care has long been clearly established. Defendants are therefore not entitled to a defense of qualified immunity.

32. The Defendants engaged in the above-described actions while acting under the color of state law.

33. The Defendants deprived Roy Hall of his constitutional right to adequate medical

treatment for his serious medical condition.

34. The Defendants acted or failed to act with deliberate indifference to Mr. Hall's serious medical needs.

35. Defendants knew of and disregarded a substantial risk of serious harm to Mr. Hall's health and safety despite obvious indications that he needed medical care that were apparent to laymen, including other prisoners who told DCSO staff that Mr. Hall needed help.

36. The policies and customs of DCSO and CCS were the moving force behind the constitutional violations. These policies and customs were implemented with deliberate indifference to the rights of arrestees or pretrial detainees, including Mr. Hall. By way of alternative pleading, Defendants did not have a policy with regard to the treatment of an inmate such as Roy Hall but engaged in a pattern of conduct or regular practice of conduct sufficient to give rise to a constitutional violation under applicable federal and state statutes and caselaw.

37. Plaintiff would also assert that Defendants failed to adequately train their employees and agents, in deliberate indifference to the health and welfare of Mr. Hall.

38. Plaintiff further avers that Mr. Hall's constitutional right to be free from cruel and unusual punishment or, as a pretrial detainee, to be free from any punishment was violated by the Defendants' actions or inactions.

39. Defendants' actions or omissions constitute violations of Mr. Hall's Eighth and Fourteenth Amendment rights and pursuant to 42 U.S.C § 1983, Plaintiff has a claim for compensatory and punitive damages, costs, interests, and attorneys' fees as set forth in 42 U.S.C. § 1988.

### VII. Claims Under State Law

40. The allegations set forth in the previous paragraphs to this Complaint are

incorporated herein by reference.

41. Defendant DCSO is also sued pursuant to the provisions of the Governmental Tort Liability Act, T.C.A. § 29-20-101, et seq., thereby subjecting it to liability for the acts of its Agents and Officers.

42. Defendant DCSO is a governmental entity as defined in T.C.A. § 29-20-103.

43. Defendant DCSO's immunity from suit has been removed by the Tennessee Governmental Tort Liability Act, specifically T.C.A. § 29-20-205, which states, "Immunity from suit of all governmental entities is removed for injury proximately caused by the negligent act or omission of any employee within the scope of his employment. ..."

44. Defendant DCSO has waived its immunity.

45. Defendants DCSO and CCS are being sued for negligence for the following acts which include, but are not limited to, hiring, retaining, supervising, failing to take necessary steps to prevent the injuries suffered by Roy Hall, and failure to provide necessary medical attention to a pretrial detainee in their care and custody. Moreover, these Defendants are being sued for and are liable for the negligent acts of their employees. Further, Defendant Arnold failed to make timely rounds and cell checks as required, and thus failed to timely discover Mr. Hall when he was dying.

46. Defendants DCSO and CCS are liable under applicable state law for the actions and omissions committed by their employees who were acting within the scope of their employment at all times in connection with their actions or inactions.

47. As a direct and proximate result of their failure to properly train and supervise their employees, Defendants DCSO and CCS could reasonably foresee that their employees would fail to provide necessary medical attention to a pretrial detainee under their exclusive care

and custody.

48. Defendants owed Mr. Hall a duty to provide necessary emergency medical attention to him while he was in their custody as a pretrial detainee. A duty existed on the part of Defendants DCSO and CCS, through their employees and agents, to act as ordinary, prudent, and reasonable persons and to protect Mr. Hall from unreasonable risk of injury and harm, including death.

49. Defendants breached their duty to Mr. Hall by failing to provide necessary medical treatment to him even though they were aware of the seriousness of his medical condition, with the result that Hall died unnecessarily.

50. Defendant DCSO, through its employees, failed to make timely rounds and cell checks with the result that Roy Hall's serious medical condition and need for emergent care was not timely discovered when he was dying.

51. There was a foreseeable risk of injury and death to Mr. Hall at the time of Defendants' and/or its agents' conduct.

52. Defendants breached their respective duties, and said breaches were the cause in fact and proximate cause of Mr. Hall's injuries and death.

## VIII. Damages

53. As a direct and proximate result of the aforementioned actions and omissions of Defendants, Roy Hall sustained injuries including, but not limited to, physical pain and suffering, emotional pain and suffering, loss of future earning capacity, medical expenses, loss of enjoyment of life, and loss of consortium of decedent's family.

54. Plaintiff asserts all available damages under Tennessee and Federal law.

## IX. Prayer For Relief

55. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests and prays:

   A. That proper process issue and be served on Defendants;

   B. That Plaintiff receive a jury trial on all the issues raised herein;

   C. That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

   D. That Plaintiff be awarded punitive damages to the extent applicable in an amount to be determined at trial;

   E. That the Court award attorneys' fees, expenses and costs in this action to the full extent permissible, including pursuant to 42 U.S.C. § 1988; and

   F. That Plaintiff be awarded such other further and general relief which the Court deems proper or appropriate.

Respectfully Submitted,

LAW OFFICES OF DAVID RANDOLPH SMITH &
EDMUND J, SCHMIDT III

By: /s/ David Randolph Smith
David Randolph Smith, TN Bar #011905
1913 21st Avenue South
Nashville, Tennessee 37212
Phone: (615) 742-1775
Fax: (615) 742-1223
Web: http://www.drslawfirm.com
e-mail: drs@drslawfirm.com

*Attorneys for Plaintiff*

12

Case 3:10-cv-00496   Document 1   Filed 05/21/10   Page 12 of 13 PageID #: 12

_Adam Cook_ by _David Randolph Smith_

Adam K. Cook, NH Bar #17447
Human Rights Defense Center
P.O. Box 2420
West Brattleboro, VT 05303
Phone: (802) 257-1342
Fax: (866) 735-7136
e-mail: adam_k_cook@yahoo.com

*Attorneys for Plaintiff*